OPINION
{¶ 1} The Greene County Court of Common Pleas entered an order finding defendant-appellee Gregory Tobias in contempt of court for failure to pay his ex-spouse, plaintiff-appellant Pamela Tobias, a portion of his public pension benefits. The trial court found that Pamela was entitled to the sum of $744.53 per month as her coverture fraction portion of Gregory's pension. The amount of Pamela's monthly benefit was determined by the trial court based upon the amount of Gregory's initial monthly benefit rather than his subsequent monthly benefits, which had been adjusted to reflect a cost of living increase. The trial court further determined that Gregory owed approximately $15,000 in back payments, which it ordered him to pay, along with $500 for Pamela's attorney fees.
 {¶ 2} Pamela contends that the trial court erred by failing to award her a share in the cost of living increases and by failing to award her pre-judgment interest on the back payments awarded to her.
 {¶ 3} We conclude that the statute applicable to Gregory's pension does not allow for an ex-spouse to share in cost-of-living adjustments, and that the unsettled amount of Pamela's interest in Gregory's pension payments, together with a personal bankruptcy resulting in some uncertainty regarding the dischargeability of those obligations, justified the trial court in exercising its discretion not to award interest on the arrearages in Gregory's payments of those obligations. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 4} Pamela Tobias and Gregory Tobias were married in 1977. They were divorced in November, 1997. Of relevance to this appeal, they filed an agreed judgment which provided that Pamela is entitled to a portion of Gregory's pension with the Police and Fireman's Retirement System. The agreement stated:
 {¶ 5} "Wife shall be awarded 50% of the balance of Husband's Pension Plan with the Police and Fireman's Retirement System from the date of marriage to October 17, 1997. The pension shall be awarded by supplemental Entry with the Defendant to receive a Social Security equivalent offset for his retirement with said Pension Fund."
 {¶ 6} Gregory retired in April of 2001. As of that time, no supplemental entry had been filed regarding Pamela's share of the pension plan. Gregory began receiving pension benefits in June, and failed to pay Pamela any portion of the pension benefits. In October of 2001, Pamela filed a contempt motion regarding Gregory's failure to pay her any portion of the pension benefits. Subsequently, the parties agreed that Gregory would pay Pamela the sum of $660 per month until a determination could be made as to the exact amount of her interest in the pension.
 {¶ 7} On July 30, 2002, an order was entered in which the parties stipulated that Pamela's coverture fraction portion, after a Social Security offset, was 32.93% of Gregory's pension benefits. They further stipulated that Gregory's pension benefits had been increased to reflect a cost-of-living adjustment (COLA).
 {¶ 8} The record also shows that Gregory filed for bankruptcy in 2002, and that he failed to make any payments to Pamela during the pendency of the bankruptcy action.
 {¶ 9} On September 11, 2002, Pamela filed another motion for contempt, citing Gregory's failure to make payments for July, August and September.
 {¶ 10} A hearing was held on February 10, 2003. The trial court found Gregory in contempt for failure to pay Pamela her portion of the pension benefits. The trial court permitted Gregory to purge himself of contempt by paying all delinquent payments, as well as $500 towards Pamela's attorney fees. The trial court further found that Pamela was not entitled to any COLA increases in Gregory's pension, and that her monthly benefit should be calculated based upon the initial benefit amount, without any COLA increases. From this judgment, Pamela appeals.
 II {¶ 11} Pamela's First Assignment of Error provides as follows:
 {¶ 12} "The trial court erred in denying, as a matter of law and fact, cola increases to appellant's marital percentage of pension because the appellant is 32.93% rightful owner of the marital pension receiving the annual 3% cola."
 {¶ 13} Pamela contends that the trial court erred by failing to award her a portion of the cost of living increases awarded to Gregory's pension, and by basing the amount of her monthly benefit solely upon the amount of Gregory's initial monthly benefit, rather than upon his subsequent adjusted monthly benefit amount.
 {¶ 14} Upon the granting of a divorce, the trial court is required to divide and distribute the marital estate between the parties in an equitable manner. R.C. 3105.171(B). In general, pension and retirement benefits acquired by a spouse during the marriage are deemed marital assets that are subject to division. R.C. 3105.171(A)(3)(a)(i). Pamela relies upon the case of in Erb v. Erb, 91 Ohio St.3d 503, 2001-Ohio-104, which she cites in support of her claim that she is also entitled to a portion of the COLA increases in Gregory's pension benefits. In Erb, the Supreme Court of Ohio held that the anti-alienation clause of R.C. Chapter 742, which governs the Police and Fire Pension Fund, does not prevent the fund from making direct payments of benefits to the ex-spouse of a member. While Erb does indicate that an ex-spouse of a pension fund member would have a property interest in the pension benefits, it does not purport to give an ex-spouse membership privileges in the fund, and it does not address the issue of an ex-spouse's entitlement to COLA increases.
 {¶ 15} Am. Sub. H.B. 535 was enacted by the Ohio General Assembly and became effective on January 1, 2002, after the Erb decision. This statute permits four state pension plans — Public Employees Retirement System, Ohio Police and Fire Pension Fund (OPFPF), School Employees Retirement System and State Highway Patrol Retirement System — to accept court orders requiring direct payment of pension benefits to former spouses.
 {¶ 16} The parties have not cited, nor have we found, any cases that have addressed the issue whether Am.Sub.H.B. 535 gives an ex-spouse of a member any rights to the COLA increases in the member's pension fund. However, a reading of the law relevant to this issue indicates that the General Assembly did not intend to permit ex-spouses to participate in COLA increases. Specifically, R.C. 3105.821 provides that the monthly benefit to be paid to an ex-spouse of a member of the fund shall be determined based upon whichever of the following three options is applicable:
 {¶ 17} "(A) If the participant is receiving a monthly benefit, the monthly benefit shall be the benefit the participant is receiving at the time the decree of divorce or dissolution becomes final;
 {¶ 18} "(B) If the participant has applied for but is not yet receiving a monthly benefit, the monthly benefit shall be the benefit for which the participant is eligible;
 {¶ 19} "(C) If the participant has not applied for a benefit, the monthly benefit shall be the benefit calculated at the time the participant elects to take it."
 {¶ 20} It is clear from reading this section that the ex-spouse's benefit is limited to the initial amount of the member's monthly benefit and to any COLA increase accrued prior to the date of the divorce. In other words, the new law does not provide for future COLA increases for ex-spouses of members. See, 2 Sowald and Morganstern, Ohio Domestic Relations Law (Fourth Edition 2002) 463, Section 29:55. Additionally, the law does not grant survivorship rights to an ex-spouse and does not allow the ex-spouse to begin receiving payments until the member spouse applies for benefits. Id.
 {¶ 21} While we are not unsympathetic to Pamela's cause, we conclude that Erb does not provide the relief she seeks. Pamela's remedy for any perceived injustice lies with the General Assembly, not the courts.
 {¶ 22} Pamela's First Assignment of Error is overruled.
 III {¶ 23} Pamela's Second Assignment of Error states as follows:
 {¶ 24} "The trial court erred in concluding, as a matter of law and fact, that the appellant is not entitled to pension colas, because the court can revisit pension benefit issues and clarify the intent of a divorce decree."
 {¶ 25} Pamela contends that the divorce decree is ambiguous with regard to whether she is entitled to COLA increases and that the trial court therefore erred by failing to clarify the terms of the decree.
 {¶ 26} We conclude that this assignment of error is without merit, based upon our resolution of the First Assignment of Error, in Part II, above, wherein we concluded that an ex-spouse of a fund member is not entitled to participate in COLA increases to the Ohio Police and Fire Pension Fund. Accordingly, the Second Assignment of Error is overruled.
 IV {¶ 27} Pamela's Third Assignment of Error states as follows:
 {¶ 28} "The trial court erred in failing, as a matter of law and fact, to award appellant interest on the judgment."
 {¶ 29} Pamela contends that, pursuant to R.C. 1343.03(A), the trial court should have awarded interest on the arrearage amount owed to her by Gregory.
 {¶ 30} R.C. 1343.03(A) provides, in pertinent part, that "when money becomes due and payable upon any . . . instrument of writing . . . and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten percent per annum." The trial court's decision whether to award interest under R.C. 1343.03(A) will not be reversed on appeal in the absence of an abuse of discretion. Dunbar v. Dunbar (1994),68 Ohio St.3d 369, 370.
 {¶ 31} In this case, our review of the record reveals that Pamela never made a request to the trial court for interest either in her contempt motions or in any later requests. Given her failure to request interest, we cannot say that the trial court abused its discretion by failing to award such relief. Furthermore, given the unsettled amount of Pamela's interest in Gregory's pension payments, together with a personal bankruptcy resulting in some uncertainty regarding the dischargeability of those obligations, we conclude that the trial court did not abuse its discretion by failing to award interest on the arrearages in Gregory's payments of those obligations.
 {¶ 32} Accordingly, the Third Assignment of Error is overruled.
 V {¶ 33} All of Pamela's Assignments of Error being overruled, the judgment of the trial court is affirmed.
Brogan and Grady, JJ., concur.